

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5164 | **DATE** | 4/22/2003 |
| **CASE TITLE** | Campbell's Personal Care, et al. vs. Tommy Thompson, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for summary judgment [27-1] is denied. Defendants' motion for summary judgment [24-1] is granted. Judgment is entered in favor of the defendants and against the plaintiffs. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | **Document Number** |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AP | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 29 |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMPBELL'S PERSONAL CARE and MAE C. CAMPBELL, <br><br> Plaintiffs, <br><br> v. <br><br> TOMMY THOMPSON, Secretary of the United States Department of Health and Human Services, and BLUE CROSS BLUE SHIELD OF ILLINOIS, d/b/a THE HEALTH CARE SERVICE CORPORATION, <br><br> Defendants. | No. 01 C 5164 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Campbell's Personal Care ("CPC") and Mae C. Campbell seek review under 42 U.S.C. § 1395oo(f) of the decision of the Medicare Provider Reimbursement Review Board ("PRRB") affirming the Department of Health and Human Services' decision to reimburse a lower number of payments than CPC believes is due for services rendered in 1995. Currently before this Court are Plaintiffs' and Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because the PRRB's decision was supported by substantial evidence on the record as a whole, we grant Defendants' motion for summary judgment, (R. 24-1), and deny Plaintiffs' motion for summary judgment, (R. 27-1).

## RELEVANT FACTS

CPC, a home health care agency owned and operated by Ms. Campbell, has been a provider of Medicare services since 1988. CPC mainly provided services to Chicago's indigent population. CPC maintains that not all of its claims for home health visits in 1995 were processed and that Defendants therefore undercounted and did not reimburse CPC for the correct number of visits.

## I. The Medicare Reimbursement Process

Under the Medicare statute, home health agencies such as CPC enter into provider agreements with the Secretary of Health and Human Services ("Secretary"). 42 U.S.C. § 1395cc. The Secretary contracts with fiscal intermediaries that pay providers the "reasonable cost" of services supplied to Medicare beneficiaries. 42 U.S.C. § 1395f(b)(1). In order to determine the "reasonable cost" of services rendered, the provider must supply the Secretary or fiscal intermediary with data in a cost report on a regular basis. The provider is required to keep financial records that can be used to calculate the amount of reimbursement. 42 C.F.R. § 413.20(a). These records must be of such quality that the data can be verified by auditors if necessary. 42 C.F.R. § 413.24(a).

As part of the reimbursement process, the intermediary generates a document called the Provider Statistical and Reimbursement System report ("PS&R"). The PS&R is a Medicare statistical report that assesses the accuracy of the provider's cost data. It lists all Medicare charges reported to the intermediary by the provider during each quarter. When the intermediary creates the PS&R, it also generates two statistical reports called the Payment Reconciliation Report and the Provider Summary Report. The Payment Reconciliation Report is a detailed report of claims accepted by the PS&R system, while the Provider Summary Report summarizes claim data for reimbursement purposes. The intermediary uses the Provider Summary Report to establish reimbursement amounts unless the provider furnishes proof that inaccuracies exist in that report.

Providers such as CPC receive estimated monthly payments. At the end of the year, the intermediary makes adjustments for any overpayment or underpayment. The intermediary

2

analyzes the provider's annual cost report along with the PS&R to determine the correct amount of reimbursement due the provider.

## II. Campbell's 1995 Costs

CPC maintains that its staff kept daily, weekly and monthly records of services that it provided in 1995. In order to be reimbursed for these services, CPC submitted claims electronically to its fiscal intermediary, Blue Cross Blue Shield of Illinois ("BCBS"), using the "Florida Shared System."[1] When BCBS paid a claim, CPC's staff updated its records to reflect the reimbursement.

CPC alleges that a number of visits provided in 1995 were never reimbursed by BCBS. At the PRRB hearing, Ms. Campbell testified that when BCBS failed to process a claim CPC would resubmit a claim through the Florida Shared System. If the claim did not get reimbursed again, Ms. Campbell contends that CPC mailed a hard copy of the bill to BCBS. According to Ms. Campbell, in January 1996 CPC sent BCBS all claims that had not yet been reimbursed from 1995. She testified that BCBS did not claim that these visits had not been provided or that they were not covered by Medicare.

In its 1995 cost report, CPC reported, based on its internal billing records, that it provided 7,344 total services. BCBS, using PS&R data generated in March 1997, concluded that only 5,769 visits should be reimbursed. CPC alleges that it notified BCBS by phone of the discrepancy between the PS&R data and its internal billing logs.

CPC filed an appeal to the PRRB in order to obtain reimbursement for the visits it alleges were provided and submitted to BCBS. It claimed before the PRRB that its internal billing data was more accurate than the PS&R data. CPC alleged that BCBS failed to process some of its

---

[1] The Florida Shared System allowed CPC to submit its claims electronically to BCBS. The system also offers providers the ability to check on the status of their claims. (R. 15-1, Admin. R. at 20, PRRB Decision.)

3

claims and that BCBS also stopped paying claims for a number of months. CPC also alleged that BCBS did not send it the PS&R on a regular basis and that BCBS did not furnish CPC with a Provider Reconciliation Report at the end of 1995.

### III. The PRRB Decision

The PRRB affirmed the intermediary's adjustments reducing the number of visits reimbursed by Medicare, finding that the PS&R was the best evidence of CPC's 1995 visits. The PRRB based its decision on Ms. Campbell's failure to provide any explanation for the difference between the PS&R and CPC's internal billing records. The Board also found that CPC failed to produce a listing of the unpaid claims to reconcile its records with the PS&R.

The PRRB further noted that CPC could not state whether BCBS ever received certain claims. Although Ms. Campbell testified before the PRRB that CPC resubmitted claims through the mail with return receipt requested, the PRRB found that there was no evidence included in the record supporting her statements. Finally, the PRRB found that Ms. Campbell could not state what claims remained unpaid from fiscal year 1995. As a result, the PRRB found that the PS&R was the best evidence of the provider's claims.

## LEGAL STANDARDS

The Secretary's decision is entitled to deference. Review of the Secretary's decision under 42 U.S.C. § 1395oo(f) incorporates the standards of the Administrative Procedure Act and will not be reversed by the Court unless it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with the law. *Loyola Univ. of Chi. v. Bowen*, 905 F.2d 1061, 1066-67 (7th Cir. 1990); *see also Saint Mary of Nazareth Hosp. Ctr. v. Shalala*, 96 F. Supp. 2d 773, 776 (N.D. Ill. 2000). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the substantial evidence standard of review, the court must review the record as a whole, taking into account whatever fairly detracts from the weight of the evidence. *In-Home Health Care Serv. of Suburban Chi. N., Inc. v. Harris*, 512 F. Supp. 84, 86 (N.D. Ill. 1981).

## ANALYSIS

### I. The PRRB's Decision was Supported by Substantial Evidence

CPC argues that substantial evidence does not support the PRRB's decision that the PS&R was the most accurate record of its 1995 claims. Specifically, CPC claims that the PS&R does not account for all of its 1995 claims because BCBS allegedly failed to pay for all the services provided by CPC. As a result, CPC argues that the PS&R is inaccurate and that the downward adjustments to its fiscal year 1995 payments were improper.

The Department of Health and Human Services issued a Medicare Intermediary Manual that, as both parties agree, requires the intermediary to use the PS&R in determining payments due a provider, unless the provider furnishes proof that the PS&R is inaccurate. Unfortunately for CPC, there is no evidence in the record that it furnished proof to BCBS that the PS&R was not accurate. Although Ms. Campbell testified before the PRRB that CPC "brought [the PS&R's alleged inaccuracies] to their attention," (R. 15-1, Admin. R. at 95, Hr'g Tr.), the PRRB had no written documentation supporting Ms. Campbell's assertions and thus could properly discount them.[2] *See, e.g., Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 484 (7th Cir.

---

[2] Ms. Campbell also testified before the PRRB that CPC followed up repeatedly with BCBS about unpaid claims from 1995 before BCBS issued the PS&R for that year. (R. 15-1, Admin. R. at 87, Hr'g Tr.) Although she claimed to have sent letters by return receipt addressing the unpaid claims, Ms. Campbell unfortunately did not submit any copies of letters or return receipts from this correspondence to the PRRB. Thus, the PRRB found the evidence "inconclusive" as to whether BCBS ever received notification about CPC's unpaid claims. (*Id.* at 20, Hr'g Decision.) Because there was no documentation supporting her testimony, it was reasonable for the PRRB to disregard her statements that CPC repeatedly followed up with BCBS about unpaid claims.

5

2001) (commenting that an administrative law judge's job is to give testimony "more or less weight based on his view of the credibility of the witnesses").

In addition to the lack of written documentation as to whether CPC notified BCBS about the PS&R's inaccuracies, CPC failed to submit its billing logs to BCBS as proof that the PS&R was inaccurate until a week before the PRRB hearing, preventing BCBS from reviewing these logs against its records. (R. 15-1, Admin. R. at 178, Hr'g Tr.) Furthermore, the billing logs submitted to the PRRB did not indicate which particular claims remained unpaid, preventing either the PRRB or BCBS from reconciling the internal billing logs with the PS&R to determine whether inaccuracies did exist. There was also evidence before the PRRB that CPC's billing records contained some internal inconsistencies. For example, the provider's billing logs contained some claims marked as unpaid; the PS&R, however, indicated that BCBS paid these specific claims. (*Id.* at 128, Hr'g Tr.) In short, CPC could not provide any specific explanation at the hearing as to why the PS&R differed from the internal billing records and why the PS&R was inaccurate. Thus, CPC failed to "provide proof" as required by the Medicare Intermediary Manual to preclude the use of the PS&R in determining payment amounts for 1995.

Given the evidence before the PRRB regarding the Department of Health and Human Services' consistent reliance on the PS&R for determining payments to providers, as well as the lack of evidence beyond Ms. Campbell's testimony showing whether CPC actually furnished proof that inaccuracies existed in this report, it was reasonable for the PRRB to conclude that the PS&R was the most accurate report of CPC's 1995 claims. The "failure to submit documentation to enable the intermediary to determine Medicare charges accurately is sufficient cause for reliance on the PS&R reports." *See Girling Health Care v. Shalala*, 85 F.3d 211, 216 (9th Cir. 1996). Although CPC eventually submitted its billing logs before the PRRB hearing, it

did not enable the accurate determination of Medicare charges because it did not note which particular claims remained unpaid. Therefore, the PRRB's decision that the PS&R was the most accurate record was supported by substantial evidence on the record as a whole and must be upheld by this Court.

## II. BCBS's Fraud Conviction

CPC argues that "the issues surrounding the termination of BCBS as a fiscal intermediary for fraudulent conduct" suggest that the PRRB should not have found the PS&R data to be the most accurate record of CPC's 1995 claims. The government terminated BCBS of Illinois in 1998 because of Medicare fraud in its claims processing.

The PRRB took note of CPC's argument that the PS&R was inaccurate because of BCBS's termination from the Medicare program due to problems with its claims processing. However, there was no evidence in the record that this fraud actually impacted CPC's claims. The only evidence of fraud before the PRRB was a *Chicago Tribune* newspaper article that claimed that the fraud occurred in three Marion, Illinois offices. (R. 15-1, Admin. R. at 247, Article). However, none of these three offices processed CPC's claims. In addition, the article stated that the fraud ended in approximately mid-1994, before CPC submitted claims for fiscal year 1995. Given that the fraud in claims processing occurred before the claims at issue in this case were submitted and that the fraud occurred in different offices than where CPC's claims were processed, the PRRB could still reasonably conclude that the PS&R generated by BCBS was the most accurate record of CPC's 1995 claims. The absence of evidence in the record linking CPC's claims processing to any fraud on the part of BCBS further suggests the PRRB's decision was reasonable.

## CONCLUSION

Although we sympathize with Ms. Campbell and CPC's situation, we cannot, under the deferential standard of review, simply reevaluate all the evidence before us. Rather, we must assess whether the PRRB's decision was supported by substantial evidence. We conclude that it was and, for the reasons set forth in this opinion, we deny Plaintiffs' motion for summary judgment, (R. 27-1), and grant Defendants' motion for summary judgment, (R. 24-1). The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Defendants.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: April 22, 2003